**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CLEVELAND AREA LOCAL,** ) | **CASE NO. 09 CV 85** |
| **AMERICAN POSTAL WORKERS** ) | |
| **UNION,** ) | |
| ) | |
| Plaintiff, ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| vs. ) | |
| ) | |
| **UNITED STATES POSTAL SERVICE,** ) | **Memorandum of Opinion and Order** |
| ) | |
| Defendant. ) | |

### INTRODUCTION

This matter is before the Court upon plaintiff's Motion for a Preliminary Injunction (Doc 3) and defendant's Motion for Leave (Doc. 7). This case arises out of defendant's decision to transfer certain Postal Service employees from a daytime work shift to a night shift. For the reasons stated below, plaintiff's Motion for a Preliminary Injunction is DENIED. Defendant's Motion for Leave is GRANTED.

**FACTS**

These facts are taken from plaintiff's verified Complaint unless otherwise stated. Plaintiff, the Cleveland Area Local American Postal Workers Union (the "Union"), represents a bargaining unit of United States Postal Service employees who work in and around Cleveland, Ohio.  Defendant is the United States Postal Service ("USPS").

Plaintiff and defendant are parties to a national collective bargaining agreement (the "National Agreement") that outlines the terms and conditions of employment for the Clerk Craft employees of the USPS.  Plaintiff and defendant are also parties to a Local Agreement that dictates certain terms and conditions of employment for Clerk Craft employees in and around Cleveland.

The National Agreement provides in relevant part:

> **Article 3**
> **Management Rights**
>
> The Employer shall have the exclusive right, subject to the provisions of this Agreement and consistent with applicable laws and regulations:
> ***
> B.  To hire, promote, transfer, assign, and retain employees in positions within the Postal Service ...
>
> C.  To maintain the efficiency of the operations entrusted to it;
>
> D.  To determine the methods, means, and personnel by which such operations are to be conducted
> ***
>
> **Article 12**
> **Principles of Seniority, Posting and Reassignments**
> ***
> Section 4.  Principles of Reassignments
> A. A primary principle in effecting reassignments will be that dislocation and inconvenience to employees in the regular work force shall be kept to a minimum, consistent with the needs of the

2

> service. Reassignments will be made in accordance with this
> Section and the provisions of Section 5 below.
>
> ***
>
> Section 5. Reassignments
>
> ***
>
> B. Principles and Requirements
>
> ***
>
> 4. The Union shall be notified in advance (as much as six (6)
> months whenever possible), such notification to be at the regional
> level, except under A.4 above, which shall be at the local level.

Defendant explains that postal workers in the Cleveland Processing & Distribution Center ("P&DC") work in three "tours" or shifts. Tour 1 employees work from 10:30 pm to 7:00 am. The Tour 2 shift extends from 6:00 am to 2:30 pm. Tour 3 employees are on duty from 3:00 pm to 11:00 pm. Defendant states it is currently experiencing increasing costs resulting from an increase in the number of households and businesses to which it must deliver mail. At the same time, revenues are declining given the decrease in the actual number of pieces of mail delivered (due, at least in part, to the increased use of electronic delivery media such as e-mail). As a result, defendant determined that 20 Tour 2 Clerks at the P&DC would be transferred to Tours 1 and 3.[1] No affected employee will suffer a diminution in hours, pay or benefits. In fact, each will earn a premium for any hours worked between 6:00 pm and 6:00 am.

The movement of Tour 2 employees to a different tour was first discussed at a November 26, 2008 meeting. Defendant's Manager of In-Plant Support, Joyce Shepherd, discussed the plan at this meeting. Local Union President Danny Pride and Local Union

---

[1] Plaintiff estimates that 40 employees will be affected. However, defendant states there are only 22 employees currently assigned to Tour 2.

3

Clerk Craft Director Juanita Gulley were present.  The parties dispute whether sufficient detail was provided such as to constitute notice under the National Agreement.  A second meeting was held on January 8, 2009.  Plaintiff contends that it was not until this January 8 meeting that it was supplied with sufficient detail regarding the transfer plan.  The initial plan was to transfer the jobs on January 17, 2009.  Defendant has since agreed to delay the transfers until January 31, 2009.

Pursuant to the extensive dispute resolution procedures set forth in the National Agreement, the Union filed a grievance on January 13.  It states it "is ready to submit this or any other grievances to the grievance and arbitration procedure mandated in the National Agreement."[2]

Plaintiff's Complaint seeks an order declaring that defendant's actions constitute a grievance that must be arbitrated according to the National Agreement.  Plaintiff further seeks an order enjoining defendant from "implementing any elimination of Tour 2 and other senior level Clerk positions, and relocation and reassignment of said employees, at the Cleveland Central Processing facility as well as other facilities covered by the Cleveland Area Local before the issuance of the arbitration award."

Plaintiff now moves for a preliminary injunction.  The motion is opposed.[3]

---

[2] Defendant indicates that the dispute can be resolved in as few as 75 days through the procedure outlined in the National Agreement if attended to promptly. Neither party indicates whether the dispute has actually advanced through the dispute resolution process since the grievance was filed.

[3] Defendant moves for leave to file its opposition without a table of authorities and table of contents given the abbreviated briefing

4

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. "When considering a motion for a preliminary injunction, the district court should consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir. 1998); *see also Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999).[4]

These four considerations are factors to be balanced, not prerequisites that must be met. *E.g., McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997). Not all of the factors need be fully established for an injunction to be proper. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). However, a district court must make specific findings concerning each of these factors, unless fewer factors are dispositive of the issue. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997). And, while none of the factors are given controlling weight, a preliminary injunction shall not issue where there is no likelihood of success on the merits.

---

schedule set by the Court (Doc. 7). Defendant's motion is granted.

[4] Plaintiff's reliance on an alternate standard recited in *Boys Markets, Inc. v. Retail Clerk's Union*, 398 U.S. 235 (1970), is misplaced. In that case, the court held a district court had the authority to enjoin a protected union activity (a strike) and compel arbitration even though a statute precluded such injunctions. The injunction was permitted because a collective bargaining agreement required the parties to arbitrate any dispute.

*Michigan State AFL-CIO*, 103 F.3d at 1249.

### **DISCUSSION**

The dispute in this matter boils down to whether defendant has the right to transfer union employees from one shift to another and what type of notice it must provide before it makes these transfers.[5]

Plaintiff argues that defendant's failure to provide adequate notice of the transfers irreparably harms the Union by denying it the ability to collectively bargain over this issue before the transfers take place. However, plaintiff does not have the right to bargain at this time.[6] The parties bargained over this issue when the National Agreement was negotiated. The result of that bargaining appears in Article 3 of the National Agreement (cited above). Plaintiff has no right to try to alter that bargain now.

Article 3 provides that defendant has the exclusive right to transfer employees. And, Article 12 requires only that defendant give notice which will minimize "inconvenience to employees in the regular work force ... consistent with the needs of the service." Defendant

---

[5]

> The Court quickly dispenses with defendant's argument that the Court lacks subject matter jurisdiction. Defendant relies on the Norris-LaGuardia Act, 29 U.S.C. § 101, *et. seq.*, which prohibits a court from enjoining certain protected union activities. 29 U.S.C. § 104. This provision of the act is not applicable to the present dispute. No injunction is being sought *against* the Union.
>
> The Court also declines to find that plaintiff is collaterally estopped from brining this action. The case relied upon by defendant involved different parties, facts and legal issues.

[6]

> Plaintiff's lengthy discussions of "established past practices" are irrelevant to what the National Agreement requires.

gave its notice. Plaintiff is unhappy with the timing and substance of that notice. But, the National Agreement does not require any particulars. The six month time frame is merely aspirational. Similarly, there is no requirement that the notice must be in writing or must include the names of the employees affected. Plaintiff admits as much when it merely relies on its position that the parties have always done it this way in the past.

The Court concludes that additional notice would be futile. Plaintiff cannot show a likelihood of success on the merits of its claim nor can it show that it will be irreparably harmed if the transfers are not enjoined pending arbitration.[7]

**CONCLUSION**

For the foregoing reasons, plaintiff's Motion for a Preliminary Injunction is DENIED. Defendant's Motion for Leave is GRANTED. Plaintiff is hereby ORDERED to SHOW CAUSE why it's Complaint should not be dismissed. Plaintiff's filing is due no later than February 13, 2009.

---

[7] There is a question as to whether arbitration is mandatory under the National Agreement. The parties believe it is. The plain language of the agreement indicates otherwise. The conclusions reached in this Opinion do not depend on resolution of this question.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 1/29/09